# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE, | Case No.  1:22-cv-01293-SKO |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BE GRANTED; ORDER VACATING HEARING** |
| v. | (Doc. 20) |
| NANCY MOUA, | **OBJECTIONS DUE: 21 DAYS** |
| Defendant. | Clerk to Assign District Judge |
| _____/ | |

## I.      INTRODUCTION

On May 25, 2023, Plaintiff North American Company for Life and Health Insurance ("Plaintiff") filed a motion for default judgment (the "Motion") against Defendant Nancy Moua ("Defendant").  (Doc. 20.)  No opposition to the Motion has been filed.  (*See* Docket.)  The Motion is therefore deemed unopposed.

After having reviewed the papers and supporting material, the matter is deemed suitable for decision without oral argument pursuant to E.D. Cal. Local Rule 230(g), and the Court will vacate the hearing set for July 12, 2023.

1    For the reasons set forth below, the undersigned RECOMMENDS that the Motion be
2  GRANTED.

3                                    **II.    FACTUAL BACKGROUND**[1]

4        In April and June 2020, Defendant submitted to Plaintiff an Individual Life Insurance
5  Application (the "Application") designating her daughter Sunshine Lee ("Lee") as the proposed
6  insured.  (Doc. 1 ("Compl.") ¶¶ 5–7 and Ex. 1 pp. 60–72.)  In connection with the Application, Lee
7  completed a Statement of Health and Insurability ("Statement of Health").  (*Id*. ¶ 8 and Ex. 1 pp.
8  73–76.)  Lee named Defendant as the sole primary beneficiary and her two brothers as contingent
9  beneficiaries.  (*Id*. ¶ 15 and Ex. 1 p. 62.)

10       Based on answers provided by Defendant and Lee in the Application and the Statement of
11 Health, Plaintiff issued a Flexible Premium Adjustable Universal Life Insurance Policy, bearing
12 Policy No. XXXXXX9671 (the "Policy"), to Defendant as the owner and Lee as the insured, with
13 a policy period from June 10, 2020, to June 10, 2122, and a specified amount of $100,000.  (Compl.
14 ¶¶ 20–22 and Ex. 1 pp. 9–59.)

15       The Application included the following questions:

16 Question No. 19(c): "In the past 10 years, has the Proposed Insured been diagnosed
17 by a licensed medical professional, treated or recommended to get any treatment
   from a licensed medical professional, hospitalized, or presently taking
18 prescription(s) or medication(s) or had any medical procedures for any of the
   following : . . . c. Stroke, seizures, epilepsy, dizziness, fainting, or dementia?"
19

20 Question No. 20(a): "Other than indicated above, in the past 12 months, has a
   licensed medical professional recommended the Proposed Insured to: a. Have a
21 check up, EKG, X-ray, blood or urine test or any other diagnostic test that has not
   been performed, or get medical advice or treatment for any reason (excluding HIV
22 testing unless such test was in connection for an application for insurance)?"

23 Question No. 20(b): "Other than indicated above, in the past 12 months, has a
   licensed medical professional recommended the Proposed Insured to: b. Be
24 admitted to a hospital, medical facility, nursing home or assisted living facility?"

25

26

27 ---

[1] Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will
be taken as true."  *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United
28 Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating
to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied.").
Accordingly, the factual background is based on the allegations of the complaint.

(Compl. ¶¶ 9–14 and Ex. 1 p. 71.)  The Statement of Health asked the following:

> Question No. 1: Since the date of the original application or examination, whichever is earlier, for the above policy, has the person to be covered by the policy: A. Received medical advice or treatment by a member of the medical profession for any change in health (list any exceptions)? . . . B. Consulted, been examined, or treated by a physician or medical practitioner (list any exceptions)?

(*Id.* ¶ 18 and Ex. 1 p. 73.)  In response to all of these questions, Defendant and Lee answered "No."

(*Id.* ¶¶ 9–14, 18 and Ex. 1 pp. 60–76.)

The Application provides the following above the signature line:

> By my signature affixed below or my electronic signature, which I understand is attached to this application electronically, I acknowledge that this Agreement has been read in full to me and that statements and answers in the application, including statements by the Proposed Insured(s) in any medical questionnaire or supplement that become part of this application, are complete and true to the best knowledge and belief of the undersigned.
>
> ***
>
> The undersigned FURTHER AGREES to immediately advise the Company of any change to any of the responses contained in the application, including any change in the health or habits of any Proposed Insured(s), that arises or is discovered after completing this application, but before the policy or policy change is effective, as defined herein.

(Compl. ¶ 17 and Ex. 1 p. 72.)  Above the signature line on the Statement of Health, it reads:

> IT IS DECLARED that all the above statements are complete and true, to the best of my knowledge and belief.  Unless all questions are truthfully answered No, it is understood that no coverage will take effect until the Statement of Health is reviewed and accepted by the company.

(*Id.* ¶ 19 and Ex. 1 p. 74.)  Finally, the Policy provides:

> The entire contract between You and Us consists of this Policy, including any attached Endorsements or Riders, any attached schedules, the attached application for this Policy, and any attached supplemental written application(s). Each statement made in any such application, in the absence of fraud, is deemed a representation and not a warranty.  We will not use any statement made by the Insured, or on the Insured's behalf, to contest a claim under this Policy unless it is contained in an application and attached to this Policy.
>
> Any Endorsement or Rider attached to this Policy is a part of this Policy and is subject to the terms of this Policy, unless stated otherwise in the Endorsement or

1
2

Rider.

***

3
4

We cannot contest this Policy, or any Endorsement or Rider attached to it, after it
has been in effect during the lifetime of the Insured for two years from the Policy
Date or, if reinstated, for two years from the date of Reinstatement.

5

(*Id*. ¶ 23 and Ex. 1 pp. 25.)

6
7
8
9
10
11

    Lee died in October 2020 within the Policy's contestable period, and Defendant, as the primary beneficiary, made a claim on the Policy. (Compl. ¶¶ 24–25.)  During Plaintiff's ensuing routing claim investigation, it discovered that, in truth, Lee had a significant, undisclosed medical history that was omitted from the Application for the Policy.  (*Id*. ¶ 26.)  At no time prior to Lee's death did Plaintiff have knowledge of the falsity of Lee's answers and representations on the Application for the Policy.  (*Id*. ¶ 27.)

12
13
14

    In April 2022, Plaintiff notified Defendant of the denial of the claim on the Policy and tendered a full and complete refund of all premiums, plus interest, paid on the Policy via a check to her in the amount of $300.75.  (Compl. ¶ 28.)  Defendant has not cashed that check.  (*Id*. ¶ 28.)

15

### III.    PROCEDURAL BACKGROUND

16
17
18

    Plaintiff initiated this diversity action by filing its complaint against Defendant on October 8, 2022.  The complaint asserts one claim for rescission of an insurance policy issued by Plaintiff. (Compl. ¶¶ 29–35.)  Plaintiff does not seek monetary damages.

19
20
21
22
23
24

    On February 2, 2023, the Court granted Plaintiff leave to serve Defendant by publication pursuant to Fed. R. Civ. P. 4(m) and Cal. Code Civ. Proc. § 415.50, and extended the time for service of process to March 20, 2023.  (*See* Doc. 16.)  Plaintiff completed service by publication and filed its Notice of Proof of Service by Publication on March 2, 2023, showing that the Summons was published on February 9, February 16, February 23, and March 2.  (*See* Doc. 17.)  Defendant did not appear or otherwise respond to the complaint.

25
26
27

    Plaintiff requested entry of default against Defendant on April 18, 2023, which was entered by the Clerk of Court that same day.  (*See* Docs. 18, 19.)  Plaintiff filed the present Motion on May 25, 2023, requesting relief as to its sole claim in its complaint for rescission.  (Doc. 20.)  Plaintiff

28

seeks to rescind and set aside the Policy as null and void *ab initio*.  (*See id*. at 11; *see also* Compl. p. 7.)

## IV.      DISCUSSION

### A.      Legal Standard

Federal Rule of Civil Procedure 55(b)(2) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).  Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See id.*  "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo–Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)).

### B.      The *Eitel* Factors Favor Entry of Default Judgment

#### 1.      Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether Plaintiff would suffer prejudice if default were not entered.  Plaintiff may be prejudiced if the Policy is not rescinded because Defendant obtained the policy by misrepresenting Lee's health and medical history.  *See, e.g., Am. Income Life Ins. Co. v. Lopez*, No. 2:11–CV–2068 JCM (PAL), 2012 WL 4795649, at *2 (D. Nev. Oct. 9, 2012) (prejudice to plaintiff-insurer found where the defendant-insured made misrepresentations in his application for life insurance).  If the Motion is not granted, Plaintiff will likely be without other recourse to

1  obtain a remedy for such misrepresentations. *See Philip Morris.*, 219 F.R.D. at 499 ("prejudice"

2  exists where the plaintiff has no "recourse for recovery" other than default judgment). This factor

3  weighs in favor of default judgment. *See Maxum Indem. Co. v. Court Servs., Inc.*, No. 2:11-cv-2014

4  GEB EFB, 2012 WL 2090473, at *2 (E.D. Cal. June 8, 2012), *adopted by*, 2012 WL 3205069 (E.D.

5  Cal. Aug. 1, 2012); *Burlington Ins. Co. v. Diamond Partners, Inc.,* No. 1:10-cv-00100-LJO-SKO,

6  2011 WL 284490, at *3 (E.D. Cal. Jan. 25, 2011), *adopted by*, 2011 WL 587108 (E.D. Cal. Feb. 9,

7  2011).

8          **2.      Merits of Plaintiff's Substantive Claim and Sufficiency of the**
9                  **Complaint**

10          The next relevant *Eitel* factors include the merits of the substantive claim pleaded in the

11  complaint and the general sufficiency of the complaint. In weighing these factors, courts evaluate

12  whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v.*

13  *Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DirecTV, Inc. v. Huynh*, 503 F.3d 847, 854

14  (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit

15  conclusions of law.") (internal quotation marks omitted). Here, Plaintiff's complaint establishes

16  that Plaintiff is entitled to rescission.

17          "[A] material misrepresentation or concealment in an insurance application, whether

18  intentional or unintentional, entitles the insurer to rescind the insurance policy *ab initio*." *W. Coast*

19  *Life Ins. Co. v. Ward*, 132 Cal. App. 4th 181, 186–87 (2005). "Materiality is determined solely by

20  the probable and reasonable effect which truthful answers would have had upon the insurer."

21  *Thompson v. Occidental Life Ins. Co.*, 9 Cal. 3d 904, 916 (1973). "The fact that the insurer has

22  demanded answers to specific questions in an application for insurance is in itself usually sufficient

23  to establish materiality as a matter of law." *Id.*

24          Plaintiff's admitted allegations establish that Defendant and Lee failed to respond accurately

25  to various questions in the Application for the Policy and the related Statement of Health. They

26  failed to disclose in these documents Lee's accurate medical and health history. Plaintiff's

27  allegations also establish that if Defendant and Lee had accurately responded to these questions,

28  Plaintiff would not have issued the Policy to Defendant. In light of the foregoing, Plaintiff is entitled

to a judgment against Defendant that the Policy is rescinded and void *ab initio*. *See Certain Underwriters at Lloyds, London v. Triduanum Fin., Inc.*, No. CIV. S–10–116 MCE DAD, 2011 WL 6002916, at *4 (E.D. Cal. Nov. 30, 2011).

**3.    The Sum of Money at Stake in the Action**

Under this *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176–77 (C.D. Cal. 2002). Here, Plaintiff seeks no monetary damages against Defendant, but requests only that the Court rescind an insurance policy. This factor weighs in favor of entry of default judgment. *See Am. Gen. Life Ins. Co. v. Johnson*, No. CV 14–4169 DSF (RZx), 2015 WL 13047562, at *2 (C.D. Cal. Feb. 10, 2015). *See also Certain Underwriters at Lloyds, London*, 2011 WL 6002916, at *4 (E.D. Cal. Nov. 30, 2011) ("Since plaintiff only seeks rescission and declaratory relief, the amount of money at stake is not at issue.").

**4.    The Possibility of a Dispute Concerning the Material Facts**

Regarding this factor, no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true, *TeleVideo Sys.*, 826 F.2d at 917-18, and Defendant has submitted nothing to contradict the well-pleaded allegations. *See United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Additionally, Plaintiff has attached to its complaint the Application, the Statement of Health and the Policy. (*See* Compl. Ex. 1.) In light of this, there is a reduced possibility of a dispute concerning the material facts.

**5.    Whether Default Was Due to Excusable Neglect**

There are no facts in the record to suggest, much less demonstrate, Defendant's failure to respond to the complaint or defend against the Motion is the result of excusable neglect. This factor, therefore, favors the entry of default judgment.

**6.    Policy Favoring Decisions on the Merits**

This factor weighs against entry of default judgment in every case, but this policy factor is

not dispositive, particularly when a defendant fails to appear and defend the action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.  Although the Court favors resolving cases on the merits after adversarial proceedings, it cannot force Defendant to participate.  Further, as Plaintiff only seeks to rescind its insurance policy, rather than seek damages against Defendant, the Court finds that Defendant will not be overly prejudiced by this default.  *See, e.g., United Specialty Insurance Co.*, 2016 WL 4434479, at *2.

## V.   CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the hearing set for July 12, 2023, on the Motion is VACATED, and IT IS HEREBY RECOMMENDED THAT:

1.   Plaintiff's motion for default judgment against Defendant (Doc. 20) be granted;

2.   The district court enter judgment against Defendant and order that North American Company for Life and Health Insurance policy no. XXXXXX9671 issued to Defendant is rescinded and set aside as null and void *ab initio*; and

3.   The Clerk of Court close this case.

The Clerk of Court is DIRECTED to assign a district judge to this action.

These findings and recommendations are submitted to the district judge to be assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **July 7, 2023**                              */s/ Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE

8